Tracy Sue **CRAWFORD**, Appellant (Defendant Below),

v.

**STATE of Indiana, Appellee** (Plaintiff Below).

No. 48S00–0103–CR–166.

Supreme Court of Indiana.

June 26, 2002.

David W. Stone IV, Anderson, IN, Attorney for Appellant.

Steve Carter, Attorney General of Indiana, Joseph A. Samreta, Deputy Attorney General, Indianapolis, IN, Attorneys for Appellee.

ON DIRECT APPEAL

BOEHM, Justice.

Tracy Crawford was found guilty, but mentally ill, for the murder of her husband and sentenced to sixty-five years imprisonment. She raises six issues for review, which we restate as five. She contends: (1) the trial court erred by allowing expert witnesses it appointed to examine her to be called out of order at trial; (2) the trial court erred by admitting her husband's journal into evidence; (3) the trial court erred by preventing her from calling rebuttal witnesses; (4) the trial court imposed an improper restitution order; and (5) the trial court imposed an improper sentence. We affirm Crawford's conviction for murder and remand with instruc-

tions to reduce Crawford's sentence to fifty-five years.

### Factual and Procedural Background

On March 5, 2001, Crawford shot and killed her husband Kent while he slept in their Madison County home. After her attempt to dispose of his body failed, she drove off with the couple's child. A passerby stopped to aid Crawford's car, which was parked on the side of a Michigan road with "help" written on a diaper in the window. Crawford asked for the police and initially told investigating officers that a couple had broken into her home and abducted her and her son. She also asked the police to check on her husband.

Crawford later admitted that she had killed Kent. She told police that Kent had repeatedly abused her sexually and that he had threatened to take their child away when she told him she had filed for divorce. She admitted having taken the gun she used to kill Kent from her grandparents' home because she wanted to be able to protect herself. She shot Kent, she said, hours after he had forced her to perform oral sex.

The State charged Crawford with murder, and a jury found her guilty but mentally ill. The trial court imposed the maximum sentence of sixty-five years and awarded $9,960.40 to Kent's estate for funeral expenses.

### I. Order of Witnesses

Indiana Code section 35–36–2–2 states that when a notice of insanity defense is filed, "the court shall appoint two (2) or three (3) competent disinterested psychiatrists, psychologists endorsed by the state psychology board as health service providers in psychology, or physicians, at least one (1) of whom must be a psychiatrist, to examine the defendant and to testify at trial." The statute is explicit as to when those appointed mental health professionals are to testify at trial: "This testimony shall follow the presentation of the evidence for the prosecution and for the defense, including testimony of any medical experts employed by the state or by the defense." Ind.Code § 35–36–2–2 (1998).

The meaning of this statute is not in doubt. Court-appointed mental health professionals are to testify after the prosecution and defense have concluded their presentations of evidence. We have held as much since at least 1954, when we stated that "it is the clear intent of the statute that an expert appointed by the court shall not be permitted to testify on the subject of the sanity or insanity of the accused until after the presentation of the evidence of the prosecution and the defense." *Henderson v. State*, 233 Ind. 598, 602, 122 N.E.2d 340, 342 (1954). In *Blackburn v. State*, 260 Ind. 5, 25, 291 N.E.2d 686, 698 (1973), this Court stated, "The reason for the final sentence in the statute . . . is clear. It relieves both parties of the burden of having the court-appointed physicians become their witnesses with the result that they would be bound by such testimony." In *Palmer v. State*, 486 N.E.2d 477, 482 (Ind.1985), we held that "[t]he statute requires that these witnesses be called following all the evidence presented by the State and by the defendant." And two weeks later, in *Thomas v. State*, 486 N.E.2d 531, 533 (Ind.1985), we stated that "the clear purpose of the statute in requiring this particular order of proof is to separate the evidence relating to the substantive crime from that related to the issue of sanity."

Because of scheduling conflicts, the trial court called the experts it appointed to examine Crawford before the close of Crawford's case. In so doing, it ignored the statute and controlling precedent. The State contends this was not reversible error because there was no prejudice to

Crawford. Crawford argues first that she need not demonstrate prejudice in this case because "[t]o hold otherwise renders the statutory provision so much surplusage which may be disregarded with impunity." She also contends that the trial court's decision prejudiced her case because the witnesses' testimony "was presented at the time when it was most likely to nullify the evidence of the defendant's expert witnesses since it was presented immediately after their testimony."

We agree with Crawford's concerns. The trial court relied on *Phelan v. State*, 273 Ind. 542, 406 N.E.2d 237 (1980), as a basis for it to proceed despite the statutory mandate and despite the holding of *Phelan* itself that allowing a court-appointed physician to testify prior to the close of the defendant's case was error. In *Phelan* we held there was no reversible error because the defendant in that case did not demonstrate prejudice. The trial court here assumed that its proceeding in error also would turn out to be harmless. When Crawford's attorney objected to the trial court's decision, the following exchange took place:

DEFENSE COUNSEL: [T]he reason you're going to do it, although the Supreme Court said it was err[or] is because in that particular case it didn't prejudice the defendant. So you're just going to make an assumption here that whatever happens here is not going to prejudice the defendant. You're going to ignore the law and you're going to ignore a Supreme Court opinion from 1980 that says it's err[or] to do it. Is that my understanding of your interpretation?

TRIAL COURT: Yes, ma'am.

■ Although the trial court presumably meant well in its attempt to accommodate the witnesses' schedules, neither the statute nor case law provides an exception to the mandated witness order in this situation. A court's indifference to clearly stated rules breeds disrespect for and discontent with our justice system. Government cannot demand respect of the laws by its citizens when its tribunals ignore those very same laws. This is one of the fundamentals of our Code of Judicial Conduct. Ind.Code of Judicial Conduct Canon 2A ("A judge shall respect and comply with the law and shall act at all times in a manner that promotes public confidence in the integrity and impartiality of the judiciary.").

■ Although Crawford raises valid concerns, and although a trial court that chooses to disregard the law leaves itself open to disciplinary action, the issue on appeal remains subject to the harmless error standard of review. "Errors in the admission or exclusion of evidence are to be disregarded as harmless error unless they affect the substantial rights of a party." *Fleener v. State*, 656 N.E.2d 1140, 1141 (Ind.1995); Ind. Trial Rule 61. Crawford argues that the presentation of the court-appointed experts prior to the close of her case nullified the testimony of her own experts, who testified immediately before. This situation is similar to *Blackburn*, where this Court noted that jurors might just as likely have been influenced to a greater extent had the testimony of the court-appointed physicians been presented at the close of evidence, leaving unfavorable testimony fresh in their minds prior to deliberations. 260 Ind. at 25–26, 291 N.E.2d at 698. In *Blackburn*, as in this case, there was no "affirmative showing of prejudice to the defendant as a result of the error." All we are presented with is Crawford's speculation as to the effect of the court-appointed experts' testimony. In sum, Crawford points to nothing showing that the sequence of the evidence likely had a prejudicial effect on the ju-

rors. Although the trial court's error was blatant and intentional, we cannot say it affected Crawford's substantial rights. Retrials involve significant emotional and financial costs to many innocent parties, including witnesses, victims, and their families. In the absence of any showing of prejudice they should not be lightly imposed. Whether this matter is grounds for action in another forum is not for this Court to resolve in the first instance.

## II. Kent's Journal was Hearsay

The State introduced into evidence a diary kept by Kent purporting to document Crawford's treatment of Kent two years before his murder. The trial court admitted the diary over Crawford's hearsay objection. The State relied on the diary to prove that Crawford's claim of mistreatment by her husband was false, and that in fact she was the one who treated her spouse poorly. The diary included the following entries:

5/22/98—My life stinks. Tracy has moved into the other bedroom (3 weeks ago) The sale of 10th Street has fallen through, I am fearful that we will not have enough money to live on, I am so stressed about my marriage.... [M]y marriage is extremely difficult, I get no respect! I have jumped up and down trying to get someone to see how terrible Tracy treats me, but no one seems to sympathize with me.... God seems to say, wait and have faith. But I am getting slapped around. If God can create the universe in 6 days, why can't he fix Tracy?

6/10—Tracy and I are not doing well. We got into a big fight last night about me not calling about the Dr. appt. she had that day. God keeps saying wait. But there is nothing to hope for. I feel completely empty.... Please God, re-

store my marriage. Help Tracy to forgive and forget.

6/25/98—Life has been difficult. Tracy and I are still struggling. She doesn't respect or trust me. She has told me that time and time again. Sunday, I told her the way I felt.... She was very hateful and embarrassed me in front of Dr. Jackson. I think Dr. Jackson felt uncomfortable and hopeless.

■ At trial, the State conceded the diary was hearsay, but contended it was admissible because Crawford had asserted an insanity defense. It is true that when the defense of insanity is raised, otherwise inadmissible evidence may be admitted. *Garner v. State,* 704 N.E.2d 1011 (Ind. 1998). However, to fall within this doctrine, otherwise inadmissible evidence must be relevant to the mental state of the defendant. *Id.* at 1014. Unlike *Garner,* the quoted portions of Kent's diary do not pertain to Crawford's claim of insanity. They merely document Kent's assertions that Crawford treated him poorly and that the couple's marriage was troubled. Although Crawford's insanity claim was related to her claim of spousal abuse, Kent's private assessment of their relationship two years before his murder had no bearing on the issue of Crawford's mental state.

■ This Court will not reverse the trial court's decision to admit evidence if that decision is sustainable on any ground. *Cf. Jester v. State,* 724 N.E.2d 235, 240 (Ind.2000). On appeal, the State abandons the argument it made at trial and instead argues that the diary fell within an exception to the hearsay rule for statements "of the declarant's then existing state of mind, emotion, sensation, or physical condition (such as intent, plan, motive, design, mental feeling, pain and bodily health)." Evidence Rule 803(3). The State contends that the journal shows Kent's state of

mind regarding his marriage.. Although the journal entries convey Kent's feelings about his marriage, we see no issue to which they are relevant. Moreover, the State used very specific assertions to attempt to prove the underlying facts, not Kent's state of mind: Crawford moved into a separate bedroom; Crawford treated him terribly; Crawford and he fought; Crawford embarrassed him at a counseling session.

■ Although error, we conclude the admission of the diary was harmless. Several witnesses, including Crawford, testified that relations between her and Kent were strained. The erroneous admission of evidence that is merely cumulative of other admissible evidence is not grounds for reversal. *Tobar v. State*, 740 N.E.2d 106, 108 (Ind.2000).

### III. Rebuttal Witnesses

■ A letter from Kent to Crawford was introduced by the defense. Crawford testified that the last time she saw the letter it was in a lavender folder on the sewing machine desk in a spare room. In rebuttal, the State recalled witness Joey Johnson. Johnson and several others were responsible for gathering financial documents from the Crawfords' home after the murder. Johnson testified that he believed he found the letter in a leather portfolio in Kent's car. The trial court denied Crawford's request to present testimony rebutting Johnson's account of the location of the letter. Crawford argues that a major component of the State's case was its attempt to prove Crawford was a liar. She contends that denying her the chance to present testimony that would contradict Johnson as to the location of Kent's letter was reversible error.

■ This Court reviews a trial court's exclusion of evidence on relevance grounds for an abuse of discretion. *Schwestak v.*

*State*, 674 N.E.2d 962, 964 (Ind.1996). Given the issues in this case, we cannot say excluding Crawford's rebuttal evidence was an abuse of its discretion. The location of the letter was not an issue in this case, and denying the opportunity to present evidence on peripheral matters in rebuttal is not error. *Baker v. State*, 483 N.E.2d 736, 738 (Ind.1985). Although Crawford is correct that her credibility was a central issue, there is no indication that Johnson's testimony about the location of the letter led the jury to consider Crawford less credible. The State made no mention of this discrepancy in its entire closing argument, despite its lengthy portrayal of Crawford as a liar in other respects.

### IV. Restitution

■ Pursuant to Indiana Code section 35–50–5–3(a)(4), the trial court ordered Crawford to pay $9,960.40 in restitution for her husband's funeral and burial expenses. Crawford argues that she should be given credit toward that amount for assets she assigned to the estate in exchange for an agreement by the estate's beneficiaries not to sue her for wrongful death. This Court reviews a trial court's restitution order for an abuse of discretion. *Roach v. State*, 695 N.E.2d 934, 943 (Ind. 1998). A trial court may consider a civil settlement when deciding whether to impose a restitution order, or the amount of restitution to order. However, civil settlements have no bearing on decisions of criminal punishment. *Wininger v. Purdue Univ.*, 666 N.E.2d 455, 457 (Ind.Ct.App. 1996) ("Imposition of a restitution order is a form of punishment, and an order of restitution is as much a part of a criminal sentence as a fine or other penalty.") (citations omitted); *Dupin v. State*, 524 N.E.2d 329, 331 (Ind.Ct.App.1988) ("Settlements in civil cases can have no effect upon sen-

tences meted out in criminal cases."). We affirm the trial court's restitution order.

### V. Sentencing

Crawford claims the trial court erred when it imposed the maximum sentence of sixty-five years for murder. Ind. Code § 35–50–2–3 (Ind.1998). This Court reviews trial court sentencing decisions for an abuse of discretion. *Thacker v. State,* 709 N.E.2d 3, 9 (Ind.1999). If a trial court uses aggravating or mitigating circumstances to enhance or reduce the presumptive sentence, or to impose consecutive sentences, it must (1) identify all significant mitigating and aggravating circumstances; (2) state the specific reason why each circumstance is determined to be mitigating or aggravating; and (3) articulate the court's evaluation and balancing of the circumstances. *Id.*

The trial court found three aggravating factors which we restate as: the nature and circumstances of the crime, including her killing Kent while he slept; and Crawford's need for correctional treatment. The court stated that the nature of the crime was "rather heinous" and found that Crawford's stealing her grandparents' gun to use against Kent indicated that it was premeditated. The court also noted Crawford's lying to police after the fact, and eventually seeking to justify her acts through her allegations of abuse.

The court found two mitigating factors: the unlikelihood that Crawford will commit a similar crime, and Crawford's lack of criminal history. However, it determined that those mitigators carried little weight because they are factors usually present in murder cases. The court stated:

> The mitigating circumstances which have been addressed, circumstances unlikely to recur in a murder case, that's always been the case because obviously the victim is not going to be around to be killed again.... So even though it's

listed as a mitigating circumstance, I don't think it's very rational or practical in this case.... The fact that there is no criminal history is true. But I hardly think it's a justifiable mitigator in this case because as records many many times show, murders [sic] aren't person[s] who commit a lot of other types of crimes.

Although the trial court also noted the jury's finding that Crawford was guilty but mentally ill, it did not appear to weigh the finding in its sentencing decision, or at least found it unpersuasive as mitigation. The court stated:

> The mental condition which has been referred to in this case, the jury did find the defendant guilty but mentally ill, it's interesting to note the testimony of the professionals regarding this situation. It's also interesting to note ... the fact that she's been examined by so many professionals and not one of them had seen fit to prescribe any particular medication for her to overcome any mental conditions that she may have or to prescribe any particular therapy for her to overcome any mental conditions that she would have. And it would seem that being incarcerated in the Madison County jail since being arrested that mental conditions would probably be heightened because of incarceration, depression, the upcoming trial, the potential of incarceration and none of that seems to be [of] concern at this point to the professionals.

Crawford contends the trial court erred by not considering her mental illness a significant mitigating factor. We agree. Crawford's experts testified, and the jury apparently agreed, that Crawford was mentally ill at the time she murdered her husband. We have previously held that a verdict finding mental illness, combined with a defendant's lack of criminal history, is a significant mitigating circumstance.

*Mayberry v. State*, 670 N.E.2d 1262, 1271 (Ind.1996). Further, in finding that Crawford was in need of correctional treatment, the trial court stated that Crawford "did not appreciate the fact that there is a process available for people in her situation ... well, she did appreciate it because she started the divorce proceedings, but abandoned those and took matters into her own hands and committed murder, rather than to continue the divorce proceedings." However, the trial court did not articulate how this fact indicated that Crawford was in need of correctional treatment beyond that prescribed by the presumptive sentence. *Walter v. State*, 727 N.E.2d 443, 447 (Ind.2000); *Wooley v. State*, 716 N.E.2d 919, 930 (Ind.1999). Finally, witnesses testified to Crawford's character and Crawford expressed remorse for what she had done. Yet the trial court made no mention of this evidence when imposing sentence.

In sum, we find no significant aggravating factors, and some mitigating. Giving deference to the trial court's minimal finding based on the circumstances of the crime, pursuant to Article VII, Section 4 of the Indiana Constitution, we revise Crawford's sentence to the presumptive fifty-five years. Crawford also contends her sixty-five year sentence was manifestly unreasonable. Because of our decision revising her sentence to fifty-five years, this claim is moot.

### Conclusion

We affirm Crawford's conviction for murder and remand with instructions to reduce Crawford's sentence to fifty-five years.

SHEPARD, C.J., and DICKSON, SULLIVAN, and RUCKER, JJ., concur.