ATTORNEY FOR APPELLANT

Jessie A. Cook
Terre Haute, Indiana

ATTORNEYS FOR APPELLEE

Steve Carter
Attorney General of Indiana

Andrew A. Kobe
Deputy Attorney General
Indianapolis, Indiana

## In the
## Indiana Supreme Court

No. 84S01-0409-CR-434

JEDEDIAH HALTOM,

*Appellant (Defendant below)*,

v.

STATE OF INDIANA,

*Appellee (Plaintiff below)*.

Appeal from the Vigo Superior Court, No. 84D05-0106-DF-1580
The Honorable Barbara L. Brugnaux, Judge

On Petition To Transfer from the Indiana Court of Appeals, No. 84A01-0310-CR-415

**August 16, 2005**

**Sullivan, Justice.**

Jedediah Haltom crashed his truck into a woman's car while driving under the influence. He settled with her for his car insurance's limits, and she executed a release from any future damages or compensation "of whatever nature." In the collateral criminal prosecution, Haltom argued that the trial court's award of cash restitution to the victim violated the release. The trial court had authority to award restitution: a private contract to which neither the State nor the court

are parties cannot impinge upon the authority of the State to seek and the court to impose a criminal sanction.

## Background

On June 21, 2001, Jedediah Haltom drove his truck into Linda D. Meyer's car. Haltom's blood alcohol content at the time of the collision measured .179%. As a result of the crash, Meyer suffered serious head and neurological injuries and subsequently accrued $27,956.68 in medical expenses and lost wages.

Before Haltom's criminal trial commenced, Meyer entered into a civil settlement agreement on October 23, 2001, with Haltom's insurance carrier, Nationwide Insurance Company, in compensation for the injuries she suffered. On the advice of her private attorney, Meyer agreed in exchange for $100,000.00 to release Nationwide Insurance, Haltom, and Haltom's mother, Cindy Stone, from any further liability for damages arising from the accident. In relevant part, Meyer agreed that:

> FOR AND IN CONSIDERATION OF the payment to me/us the sum of ONE HUNDRED THOUSAND AND 00/100 ($100,00.00) dollars, and other good and valuable consideration, I/we, being of lawful age, have released and discharged, and by these presents do for myself/ourselves, my/our heirs, administrators, executors and assigns, release, acquit and forever discharge Cindy Stone and Jedediah Haltom and Nationwide Insurance and any and all other persons and corporations, whether herein named or referred to or not, of and from any and all past, present and future actions, causes of action, claims, demands, damages, costs, loss of service, expenses, compensation, third party actions, suits at law or in equity, including claims for suits or contributions and/or indemnity, of whatever nature, and all consequential damage on account of, or in any way growing out of any and all known or unknown personal injuries, death, and/or property damage resulting or to result from an accident that occurred on or about 6-21-01 at or near 15TH STREET, TERRE HAUTE, VIGO COUNTY, INDIANA.

Def.'s Ex. 2. Meyer received payment of $100,000.00 from Nationwide Insurance on December 18, 2001, which was the limit of Haltom's policy.

After the start of Haltom's criminal trial, Meyer, through her private attorney, filed a Victim's Restitution Claim on February 27, 2002. Haltom objected to Meyer's restitution claim on the basis that she had waived her right to do so under the release she had signed on October 23, 2001. Haltom pled guilty to causing serious bodily injury while operating a motor vehicle with a blood alcohol content measuring greater than .10.[1]

At his sentencing hearing, the State asked that the trial court order Haltom to pay restitution. The trial court sentenced Haltom to probation and a period of home detention. Further the court ordered Haltom to serve 100 hours of community service and to pay $27,956.88 in restitution to Meyer. Haltom appealed the court's restitution order.

The Court of Appeals reversed. Haltom v. State, 808 N.E.2d 761 (Ind. Ct. App. 2004). It held that the trial court's restitution order was an abuse of its discretion, concluding that the Release signed by Meyer precluded the court from ordering Haltom to pay any further restitution as a condition of his probation. Id. at 765. The State sought, and we granted, transfer. 822 N.E.2d 977 (Ind. 2004)

## Discussion

Criminal restitution is provided for by Indiana Code Section 35-50-5-3. It states in relevant part that:

> in addition to any sentence imposed under this article for a felony or misdemeanor, the court may, as a condition of probation . . . order the person to make restitution to the victim of the crime. . . . The Court shall base its restitution order upon a consideration of:
>> (2) medical and hospital costs incurred by the victim (before the date of sentencing) as a result of the crime;
>>
>> (4) earnings lost by the victim (before the date of sentencing) as a result of the crime including earnings lost while the victim was hospitalized or participating in the investigation or trial of the crime.

---

[1] Ind. Code § 9-30-5-4(a)(1) (1998).

Ind. Code § 35-50-5-3(a)(2), (4) (1998). The statute further instructs that "[a]n order of restitution under subsection (a) does not bar a civil action for: (1) damages that the court did not require the person to pay to the victim under the restitution order but arise from an injury or property damage that is the basis of restitution ordered by the court; and (2) other damages suffered by the victim." Ind. Code § 35-50-5-3(e)(1), (2) (1998).

"Restitution, as a condition of probation, can be an instrumental part of the offender's rehabilitation." Miller v. State, 502 N.E.2d 92, 95 (Ind. 1986). While its principal purpose is to vindicate the rights of society, an ancillary result is that it also serves to compensate the offender's victim. See Id. (citing United States v. Carson, 669 F.2d 216, 217-18 (5th Cir. 1982)). This ancillary function, however, does not alter the fact that "an order of restitution is as much a part of a criminal sentence as a fine or other penalty." Id. (citation omitted). Because restitution is part and parcel to our system of criminal punishment, its application cannot be precluded by the existence of a civil settlement agreement.

We have held that "civil settlements have no bearing on decisions of criminal punishment." Crawford v. State, 770 N.E.2d 775, 781 (Ind. 2002). See also Dupin v. State, 524 N.E.2d 329, 331 (Ind. Ct. App. 1988) (stating that "[s]ettlements in civil cases can have no effect upon sentences meted out in criminal cases"). At the same time, a trial court remains free to "consider a civil settlement when deciding whether to impose a restitution order or the amount of restitution to order." Crawford, 770 N.E.2d at 781. This level of discretion permits the trial court to order a greater amount in restitution to compensate a victim fully for damages and injuries not yet covered, or order less or no restitution at all to prevent the victim from receiving a windfall.[2]

---

[2] In the instant case the trial court ordered Haltom to pay $27,956.88 in restitution to Meyer on the basis that:

> If a restitution order for the full value of her actual expenses had been entered before Mrs. Meyer settled with Defendant's insurance company, she would easily have qualified for the maximum his insurance would pay for the pain and suffering that is awarded in civil cases. After deducting attorney fees, typically one-third, she would have received in hand about $67,000, a little more than twice her actual damages. The Court does not see why [Meyer] should not receive the same benefit she could have received if she had waited the length of time it took to get this case resolved.

However, allowing a civil settlement to preclude restitution altogether would infringe upon the State's power to administer criminal punishment. See U.S. v. Bearden, 274 F.3d 1031, 1041 (6th Cir. 2001) (advancing the policy that "private individuals should not be allowed to thwart the penal goals of the criminal justice system by entering into releases or settlements with wrongdoers"). The State is the only party with standing to exercise such power. See Johnston v. Dobeski, 739 N.E.2d 121, 123 (Ind. 2000) (the State and the defendant are the only two parties with standing in a criminal sentencing proceeding).

By our holding today, we do nothing to constrain the ability of parties to settle civil disputes prior to the commencement or conclusion of collateral criminal proceedings. Parties remain free to enter into agreements to settle civil matters, and we are confident that they will do so. But the civil courts, not the criminal courts, are the proper venue to adjudicate these matters. See Ramsey v. Hicks, 91 N.E. 344, 354 (Ind. 1910) (noting that it is the prerogative of the civil courts to determine the meaning and legal effect of civil contracts). An aggrieved party, including a criminal defendant, remains free to seek enforcement of the terms of a release in civil court. Our criminal courts are permitted to take note of these agreements in deciding whether to order restitution and in what amount, but these agreements in no way preclude a criminal court from ordering restitution when appropriate under statute.

**Conclusion**

Having previously granted transfer, we hold that civil settlements have no preclusive effect on the power of a criminal court to order restitution. The trial court's order for restitution is affirmed.

Rucker, J., concurs. Dickson, J., concurs with separate opinion. Boehm, J., concurs in part and dissents in part with separate opinion. Shepard, C.J., dissents with separate opinion.

---

Appellant's App. at 21.

5

**Dickson, Justice, concurring**

I concur, and write separately only to point out an alternative available to courts ordering criminal restitution.

Indiana Code Section 35-50-5-3 authorizes an order of restitution "to the victim of the crime." It may well be that in some cases, the "victim" is the liability insurance carrier that has already paid full compensation to a person injured by the charged criminal conduct. In such a situation, a court may seek rehabilitation of a defendant by requiring accountability through restitution, but direct that the restitution be made to the entity that ultimately suffered the loss, which in some cases could be an insurance company.

In the present case, because Meyer suffered serious head and neurological injuries and incurred medical expenses and lost wages totaling $27,956.68, and Nationwide Insurance Company paid its full liability limits of $100,000, it is likely that such insurance proceeds represent less than full compensation for her damages sustained and to be sustained. The award of further restitution to her, rather than to Nationwide Insurance, thus appears appropriate.

I also observe that the fact and/or amount of contingent attorney fees incurred by an injured person should not be a relevant consideration in this determination. While the trial court here referred to consideration of attorney fees, the amount of restitution ordered was equal to Meyer's special damages, not her presumed attorney fees, and thus was consistent with the criminal court's interests in reformation of the defendant.

**Boehm, J., concurring in part and dissenting in part.**

I agree with the majority that the trial court was not bound by the agreement between Haltom and his victim. But the parties (the victim, Haltom, and Haltom's insurer) can be bound by contract. Accordingly, what happens to the money if the court orders any restitution should be viewed as a matter of private contract that can be agreed among Haltom, his insurer, and the victim. As I see it, it was arguably a breach of contract for the victim to seek restitution after having agreed that the payment from Haltom's insurer was in full satisfaction of her claims against Haltom. Unlike the Court of Appeals, however, I would not give Haltom the benefit of that breach, if that is what it was.

Even if the victim was in breach in seeking restitution, the trial court could have ordered it on its own initiative, or the prosecution could have requested it. I would leave it to the victim and Haltom's insurer to duke out who gets what under these circumstances. If there is in fact a collectible judgment against Haltom, who gets the benefit could have been resolved by agreement concurrent with the initial settlement of the victim's claim against Haltom. Or, as appears to be the case here, it could have been left open to future resolution, in which case ordinary principles of estoppel, indemnity and subrogation apply. Either way, it seems to me that most of the issues the Chief Justice identifies disappear because both the insurer and the victim will settle the tort claim against Haltom, or not, based on their valuations of that claim, plus the value, if any, they assign to the prospect of a restitution award that is agreed to benefit that party. Whoever gets the benefit of any restitution award, it will not reduce the net payment to the victim below the negotiated settlement amount. Nor should it inure to Haltom's benefit, if it is to serve its purpose of compensating one who has been harmed by the crime, at least in the absence of an explicit provision in the settlement agreement that requires remitting any restitution award to him.

**Shepard, Chief Justice, dissenting.**

The novel question presented in this case could be resolved either way. Judicial policy could either recognize or decline to recognize civil settlement agreements when deciding whether to impose restitution in a criminal case. I think the choice made today will turn out to be problematic for just about everyone concerned.

For example, an injured plaintiff who receives an offer of civil settlement with standard release language will have no way of knowing whether further compensation might be achieved through criminal restitution notwithstanding the release. The facts in this case are that the offer was the other driver's insurance policy limits, but whenever the damages are plausibly less than the available amount of insurance, the claimant will face an unattractive choice. Should she settle now for less than the limits and hope for more from the criminal disposition? Will the other driver be found guilty—or not guilty, in which case there will be no criminal penalty imposed at all?

More pertinent to the interests of claimants will be the impact of today's decision on how easy it is for them to obtain settlement offers from defendants and their insurance carriers. How can a carrier manage an effective settlement for its insured if the release obtained will not protect it or its insured from additional claims? Because the carrier has a duty of good faith with its insured, any settlement for less than the policy limits will subject the carrier to a later contention by the insured that the settlement wrongly left the policyholder to additional damages imposed by the restitution system.

If the wrongdoer is a person with assets, it would be even more difficult to imagine a prompt settlement. An insured wrongdoer would find that the only route to closure would be a civil trial on the merits. The delay required for this outcome would have an adverse impact all the way around. The wrongdoer would likely face sentencing before the criminal court without having agreed to an amount of compensation, and the injured party would have to wait longer to be compensated.

The Court <u>does</u> say that a criminal defendant ordered to pay restitution may reclaim it by suing the injured party for breach of the settlement agreement. Slip op. at 5. Thus, the victim's additional compensation through the restitution system is a short-lived one. And one that, because of the cost of legal representation, could also work quite adversely to both the injured party and the wrongdoer. The restitution claim here was filed by the victim's private attorney, who was presumably still at work under the terms of an ordinary contingent fee arrangement seeking to find additional compensation for the client. If so, the victim would receive only a share of the $27,000 paid by the defendant through the criminal restitution system.

The defendant would then hire counsel to pursue return of the $27,000, and he would understandably owe his attorney a fee for representing him in that litigation. Even if he obtains a judgment for the full amount, he is thus not made whole.

He has company. The victim will owe $27,000 (more than she received in the first place) and presumably need to hire counsel to defend her in the wrongdoer's recovery action.

Finally, I agree completely with the majority that restitution serves two purposes: rehabilitation of the offender and compensation of the victim. Slip op. at 4. But, the rule it adopts will pose serious questions about who should receive the restitution. In a case where the actual damages were $80,000, and the carrier paid $80,000, and the criminal court ordered restitution of $27,000, it would be the insurance carrier who should receive the restitution.

Those are not the facts before us, but the present facts pose yet another question. Here, the trial judge did not find that the actual damages suffered by the victim exceeded $100,000. The trial judge's sentencing statement, slip op. at 4 n.2, seems to say that the court chose to order $27,000 in restitution based on the idea that the victim could have waited until the criminal case was disposed of and received a restitution order of $100,000 without hiring counsel. The victim should not be in a worse position for having settled earlier, goes the theory, and thus should receive enough restitution to make up for the contingent fee presumably owed to her lawyer on the $100,000. To the extent this constitutes a finding that the actual value of the damage was $100,000, it poses yet another difficult legal issue concerning who should receive the $27,000.

At the end of the day, I think the Court's solution to this case prompts much running in place that will do little to serve any of the participants. Their lives, and ours, would be more fulsome if the Court simply decided that this was a moment when the judiciary should abide by the financial decisions of the victim and the tortfeasor. Because the Court has taken a different path, victims, tortfeasors, and insurance premium payers will all be worse off.

For these reasons, I would reverse.