## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



**FILED**

Jul 30 2015, 10:42 am

*Kevin S. Smith*

**CLERK**
of the supreme court,
court of appeals and
tax court

ATTORNEY FOR APPELLANT

John Quirk
Muncie, Indiana

ATTORNEYS FOR APPELLEE

Gregory F. Zoeller
Attorney General of Indiana

James B. Martin
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

Ashley L. Stapert,

*Appellant-Defendant,*

v.

State of Indiana,

*Appellee-Plaintiff.*

July 30, 2015

Court of Appeals Case No.
18A02-1411-CR-787

Appeal from the Delaware Circuit Court

The Honorable Kimberly S. Dowling, Judge

Cause No. 18C02-1112-FA-11

**Pyle, Judge.**

## Statement of the Case

[1] Ashley L. Stapert ("Stapert") appeals, following a jury trial, her convictions for two counts of Class A felony child molesting, which were based on two acts of

deviate sexual conduct against a six-month-old infant.[1]  On appeal, Stapert challenges the trial court's ruling on the admission of evidence and argues that her two convictions violate the Indiana Constitutional prohibition against double jeopardy.  Finding no merit to Stapert's arguments, we affirm her convictions.

[2]  We affirm.

## Issues

1.  Whether the trial court abused its discretion by admitting the victim's medical records into evidence and by allowing a sexual assault nurse examiner to testify regarding the medical records and the examination protocol.

2.  Whether Stapert's two Class A felony child molesting convictions violate the Indiana Constitutional prohibition against double jeopardy.

## Facts

[3]  In August or September 2011, twenty-one-year-old Stapert went to live with her childhood friend, Nikki Chambers ("Chambers"), and Chambers's infant daughter, J.F., who was born in May 2011.  Chambers and J.F. lived in a one-bedroom apartment, and Stapert slept in the living room.  Stapert moved out for a short time and, in early October 2011, moved back to Chambers's apartment.

---

[1] IND. CODE § 35-42-4-3(a)(1).  We note that, effective July 1, 2014, a new version of the child molesting statute was enacted and that Class A felony child molesting is now a Level 1 felony.  Because Stapert committed her offenses in November 2011, we will apply the statute in effect at that time.  Additionally, we note that the legislature amended this statute during the most recent legislative session and that this amendment will be effective on July 1, 2015.

At that time, Stapert's boyfriend, Bryan Strickler ("Strickler"), moved into the apartment too. When Chambers went to work or to the grocery store, she frequently left J.F. with Stapert and Strickler. Chambers also let J.F. sleep in her pack-n-play in the living room where Stapert and Strickler slept.

[4]    On November 8, 2011, Stapert told Chambers that Strickler had tried to smother six-month-old J.F. Chambers also found out about allegations that Stapert and Strickler had sexually molested J.F. Chambers called the police and kicked Stapert and Strickler out of her apartment. Chambers also had J.F.'s father, who was having visitation with the baby, take J.F. to the hospital to be examined. Dr. Antoinette Laskey ("Dr. Laskey") from Riley Hospital examined J.F. on November 9, 2011. This examination revealed that J.F. had warts and fissures near her anus. Dr. Laskey performed a follow-up examination of J.F. on December 21, 2011, and she noted that the anal warts had resolved at that time.

[5]    On November 30, 2011, police officers from the Muncie Police Department took turns questioning Stapert and videotaped the interview. At the beginning of the police interview, Stapert claimed that she did not molest J.F. and stated that it was Strickler who had done it. Stapert stated that Strickler had genital warts on his penis and mouth and that he was the one who would have given the warts to J.F. She also stated that Stickler had rubbed his penis on J.F.'s anus one night while she and Strickler were in Chambers's living room with J.F. Later in the interview, Stapert stated that she was afraid of getting in trouble and then admitted that she had put her finger in J.F.'s vagina while

Strickler rubbed his penis on J.F.'s anus. Stapert also admitted that she had put her mouth on J.F.'s vagina. Following the interview, the police arrested Stapert.

[6] The State then charged Stapert with two counts of Class A felony child molesting, both of which were based on her engaging in deviate sexual conduct with J.F. Specifically, Count One was based on Stapert's act of "placing her mouth on the sex organ of [J.F.,]" and Count Two was based on her act of "penetrating [J.F.]'s sex organ by an object." (App. 18, 63).

[7] The trial court held a two-day jury trial on October 6-7, 2014. During the trial, Chambers testified that J.F. had been sexually assaulted and that she had been diagnosed with genital warts. The State also admitted into evidence the DVDs of Stapert's statement to police, in which she admitted that she had put her mouth on J.F.'s vagina and had put her finger in J.F.'s vagina.[2]

[8] During the trial, the State also called a sexual assault nurse examiner ("SANE nurse"), Holly Renz ("Nurse Renz"), to testify about the medical records from J.F.'s sexual assault examination.[3] Nurse Renz testified that she had been a nurse for thirty-eight years, had been employed by the Madison County Sexual Assault Treatment Center for sixteen years, and was a board-certified SANE

---

[2] Because the officers took turns interviewing Stapert, her statement to police is contained on two DVDs. *See* State's Exs. 4 and 5.

[3] Dr. Laskey was apparently unable to testify because she had moved to Salt Lake City.

nurse. She also testified that she had not conducted the examinations of J.F. but had reviewed the medical records from those examinations.

[9] After Nurse Renz testified about the general procedures and protocols involved in conducting a sexual assault examination on a child, the State asked her to identify State's Exhibit 2, the medical records from J.F.'s November 9 and December 21, 2011 examinations. Stapert objected to the admission of State's Exhibit 2 based on "hearsay[,]" an "improper foundation" for verification that the medical records were a "complete record[,]" and lack of "qualifi[cation] as an expert witness." (Tr. 302, 303, 304). The trial court overruled the objection and admitted State's Exhibit 2 into evidence.

[10] The State then asked Nurse Renz if, based on her review of J.F.'s medical records, she believed that the appropriate procedure or protocol for doing a sexual assault exam was carried out by the hospital when examining J.F. Stapert objected, arguing that it called for "speculation[,]" improper foundation[,]" and "hearsay." (Tr. 305, 307, 309). The State responded that it sought to have Nurse Renz testify, "given her training and experience and education," about the medical records that had already been admitted into evidence so she could give an opinion—as either an expert or a skilled witness—on those medical records and provide the jury with "some information about a subject that they likely d[id] not have." (Tr. 307, 308). The trial court overruled Stapert's objections and allowed Nurse Renz to answer the State's question. Nurse Renz then testified that, based on her

review of the medical records, she believed the proper procedure had been followed.

[11]  When the State asked Nurse Renz if the medical records showed that J.F. "present[ed] . . . with any medical issues or any injuries[,]" Stapert objected based on "improper foundation and speculation" and because Nurse Renz had "no knowledge" of the protocol of Riley Hospital. (Tr. 307). The trial court overruled the objection. Nurse Renz then testified that the medical records showed that J.F. had gone to Riley Hospital and had been diagnosed with genital warts. She also testified that the records revealed that J.F. had redness around her anus and had an anal fissure, or skin tear, near her sphincter.

[12]  At the end of the State's direct examination of Nurse Renz, the prosecutor asked the nurse for her opinion of whether the medical records and J.F.'s injuries, including the presence of genital warts, were consistent with being sexually abused. Nurse Renz responded that she "kn[e]w what the impression was with Doctor Laskey[,]" and Stapert objected based on "speculation." (Tr. 316). The trial court overruled the objection, and Nurse Renz testified that she agreed with Dr. Laskey's "impression" that "it was consistent with a history of sexual abuse." (Tr. 316).

[13]  During closing arguments, the prosecutor argued that the jury should find Stapert guilty of the two charges because she "admit[ted] that she put her fingers inside of [J.F.'s] vagina" and "admit[ted] that she performed oral sex on [J.F.]." (Tr. 369). During Stapert's closing argument, her counsel argued that

the jury should find Stapert not guilty on Count Two because she had stated in the video interview that she had "touched" J.F.'s vagina with her finger but did not "penetrate" it. (Tr. 380). On rebuttal argument, the prosecutor argued that there was evidence to support Count Two. Specifically, the prosecutor told the jury to watch the video again and pay attention to where Stapert admitted the following: "I put my finger. I didn't eat her out. I put my finger in her vagina." (Tr. 385, 386).

[14] When instructing the jury, the trial court explained to the jury the elements of each of the two counts of child molesting alleged against Stapert. Specifically, the trial court instructed that Count One was based on an allegation that Stapert had placed her mouth on J.F.'s sex organ and that Count Two was based on an allegation that Stapert had penetrated J.F.'s sex organ with an object. The trial court also instructed the jury that "[t]he definition of the term 'object' include[d] the use of one's fingers." (Tr. 393).

[15] During deliberations, the jury requested to see the DVDs of Stapert's police interview and specifically requested to see only the part where Stapert admitted to inserting her finger into J.F.'s vagina. The trial court played the requested DVD in its entirety.[4] Before leaving the courtroom, a juror submitted a written question, asking "Could a person[']s tongue be considered an 'object' of penetration?" (App. 128). The trial court instructed the jury that it should refer back to the instructions.

---

[4] The trial court played State's Exhibit 5.

[16] The jury found Stapert guilty of both counts as charged. The trial court imposed a fifty (50) year sentence on each conviction and ordered that those sentences be served consecutively at the Department of Correction. Stapert now appeals her convictions.

# Decision

[17] On appeal, Stapert argues that: (1) the trial court abused its discretion by admitting the medical records from J.F.'s sexual assault examination into evidence and by allowing Nurse Renz to testify about those medical records and the sexual assault examination protocol; and (2) her two Class A felony convictions violate the Indiana Constitutional prohibition against double jeopardy.

## 1. Admission of Evidence

[18] Before we address Stapert's argument regarding the admission of evidence and testimony, we note that the admission and exclusion of evidence falls within the sound discretion of the trial court, and we review the admission of evidence only for an abuse of discretion. *Wilson v. State*, 765 N.E.2d 1265, 1272 (Ind. 2002). An abuse of discretion occurs when the trial court's decision is clearly against the logic and effect of the facts and circumstances before it. *Conley v. State*, 972 N.E.2d 864, 871 (Ind. 2012), *reh'g denied*.

[19] Turning to Stapert's argument that the trial court abused its discretion by admitting State's Exhibit 2, J.F.'s medical records, into evidence, we note that Stapert objected to the admission of this exhibit based on "hearsay" and an

"improper foundation" for verification that the medical records were a "complete record." (Tr. 302, 303). On appeal, however, she merely makes a general statement that the "trial court erred in admitting State's Exhibit 2[.]" (Stapert's Br. 7). She does not argue that the admission of this evidence violated an evidentiary rule nor does she offer any argument or citation to case law as to why it should have been excluded. Because Stapert makes no cogent argument, she has waived review of this issue. *See* Ind. App. R. 46(A)(8); *Cooper v. State*, 854 N.E.2d 831, 834 n.1 (Ind. 2006) (holding that the defendant had waived an issue on appeal because the argument, presented merely as a two-sentence assertion, was not supported by cogent argument or citation to authority).

[20] In regard to Stapert's argument that the trial court abused its discretion by allowing Nurse Renz to testify, she argues on appeal that the trial court erred by admitting the nurse's testimony "regarding medical treatment to which [she] had no personal knowledge." (Stapert's Br. 7). Specifically, she argues that Nurse Renz's testimony about J.F.'s medical records, the propriety of Riley Hospital's protocol for conducting a sexual assault examination, and her opinion regarding whether J.F. was sexually abused should have been excluded because she was a "lay witness" and because her testimony was "in violation of Indiana Rules of Evidence 602 and 701." (Stapert's Br. 9).

[21] Here, however, the State did not argue that Nurse Renz was going to testify as a lay witness under Evidence Rule 701; nor did it argue that she had personal knowledge under Rule 602. Instead, the State argued that Nurse Renz should

be allowed to testify, "given her training and experience and education," about the medical records that had already been admitted into evidence so she could give an opinion—as either an expert or a skilled witness—on those medical records and provide the jury with "some information about a subject that they likely d[id] not have." (Tr. 307, 308).

[22] In other words, the State sought to introduce her testimony, and the trial court allowed it, under Evidence Rule 702(a), which provides that:

> [a] witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue.

Under this rule, "a witness may be qualified as an expert by virtue of 'knowledge, skill, experience, training, or education[,]' . . . [a]nd only one characteristic is necessary to qualify as an expert." *Kubsch v. State*, 784 N.E.2d 905, 921 (Ind. 2003) (quoting Evid. R. 702). "As such, a witness may qualify as an expert on the basis of practical experience alone." *Id.* Additionally, "[a]n expert may base an opinion on facts or data in the case that the expert has been made aware of" and may, under certain circumstances, "testify to opinions based on inadmissible evidence[.]" Evid. R. 703.

[23] The record before us shows that there was a sufficient basis for Nurse Renz to testify as an expert witness under Evidence Rule 702(a). She testified as to her education, training, certification, and extensive experience as a SANE nurse,

including the facts that she had been a SANE nurse for seventeen years and had performed 798 sexual assault examinations. Even though Nurse Renz had not examined J.F., the nurse had specialized knowledge that was beyond the knowledge generally held by lay persons and that was helpful to the jury. Given Nurse Renz's history of experience, training, and education as a SANE nurse, we cannot say that the trial court abused its discretion in allowing the nurse's testimony.[5] *See, e.g.*, *Lyons v. State*, 976 N.E.2d 137, 142 (Ind. Ct. App. 2012) (explaining that if an expert has specialized knowledge meeting the requirements of Evidence Rule 702(a), "any weaknesses or problems in the testimony go only to the weight of the testimony, not its admissibility"); *Otte v. State*, 967 N.E.2d 540, 547 (Ind. Ct. App. 2012) (affirming the trial court's admission of a witness's testimony under Rule 702(a) even though the witness had made no personal observation of the victim), *trans. denied*; *Newbill v. State*, 884 N.E.2d 383, 398 (Ind. Ct. App. 2008) (affirming the trial court's decision, under Evidence Rule 702(a), to allow a SANE nurse to testify regarding a sexual abuse examination due to her specialized knowledge), *trans. denied*.

## 2. Double Jeopardy

[24] Turning to Stapert's argument that her two Class A felony child molesting convictions violated the prohibition against double jeopardy under the Indiana

---

[5] Furthermore, any error in the admission of the challenged testimony would have been harmless as it was, for the most part, merely cumulative of State's Exhibit 2. *See Crawford v. State*, 770 N.E.2d 775, 781 (Ind. 2002) (explaining that the erroneous admission of evidence that is merely cumulative of other admissible evidence is harmless error and is not grounds for reversal). Moreover, Nurse Renz's testimony did not address the elements of the crime, and Stapert admitted to the two acts of molestation.

Constitution, we note that the Indiana Double Jeopardy Clause provides, in relevant part, that "No person shall be put in jeopardy twice for the same offense." IND. CONST. art. I, § 14. "Indiana's Double Jeopardy Clause was intended to prevent the State from being able to proceed against a person twice for the same criminal transgression." *Richardson v. State*, 717 N.E.2d 32, 49 (Ind. 1999). Consequently, two or more offenses are the "same offense" and violate the state double jeopardy clause if, "with respect to either the statutory elements of the challenged crimes or the actual evidence used to convict, the essential elements of one challenged offense also establish the essential elements of another challenged offense." *Id.*

[25] Stapert contends that the Double Jeopardy Clause was violated under the actual evidence test. The Double Jeopardy Clause is violated under the actual evidence test if there is "a reasonable possibility that the evidentiary facts used by the fact-finder to establish the essential elements of one offense may also have been used to establish the essential elements of a second challenged offense." *Id.* at 53. Our supreme court explained that "under the *Richardson* actual evidence test, the Indiana Double Jeopardy Clause is not violated when the evidentiary facts establishing the essential elements of one offense also establish only one or even several, but not all, of the essential elements of a second offense." *Guyton v. State*, 771 N.E.2d 1141, 1142 (Ind. 2002) (quoting *Spivey v. State*, 761 N.E.2d 831, 833 (Ind. 2002)). In applying the actual evidence test, this Court must identify the essential elements of each offense and evaluate the evidence from the trier of fact's perspective. *Spivey*, 761 N.E.2d at

832.  "In determining the facts used by the fact-finder, it is appropriate to consider the charging information, jury instructions, and arguments of counsel."  *Lee v. State*, 892 N.E.2d 1231, 1234 (Ind. 2008) (citing *Spivey*, 761 N.E.2d at 832 and *Richardson*, 717 N.E.2d at 54 n.48).

[26]  Stapert asserts that the essential elements of both counts were "almost identical" but acknowledges that the essential elements differ because the specific act of deviate sexual conduct alleged in each differs.  (Stapert's Br. 11).  Her double jeopardy argument is based solely on the existence of a submitted juror question, which asked if a person's tongue could be considered an "object" of penetration.  (App. 128).  Stapert contends that this question shows that there is a reasonable possibility that the jury used the same evidentiary facts to establish the essential elements of both offenses.

[27]  The State, however, contends that there is no such reasonable possibility because:  (1) Stapert admitted to the two separate acts of inserting her finger into J.F.'s vagina and placing her mouth on J.F.'s vagina; (2) the trial court instructed the jury as to the elements of each offense; and (3) the State argued in closing arguments about Stapert's two separate offenses against J.F.  We agree with the State.

[28]  "[A] 'reasonable possibility' that the jury used the same facts to reach two convictions requires substantially more than a logical possibility."  *Lee*, 892 N.E.2d at 1236.  "Rather, 'reasonable possibility' turns on a practical assessment of whether the jury may have latched on to exactly the same facts

for both convictions." *Id. See also Griffin v. State,* 717 N.E.2d 73, 89 (Ind. 1999) ("To establish that two offenses are the same offense under the actual evidence test, the possibility must be reasonable, not speculative or remote."), *cert. denied.*

[29] Here, the State charged Stapert, in Count One, with Class A felony child molesting, which required the State to show beyond a reasonable doubt that Stapert performed deviate sexual conduct by placing her mouth on six-month-old J.F.'s sex organ. Under the Class A felony child molesting charge in Count Two, the State was required to prove beyond a reasonable doubt that Stapert performed deviate sexual conduct by penetrating J.F.'s sex organ with an object. The trial court repeated these charges in its jury instructions and also instructed the jury that a finger was included in the definition of an object. Additionally, the evidence presented by the State showed that there were distinct facts supporting the two child molesting charges. Specifically, Stapert admitted to putting her mouth on J.F.'s vagina and to putting her finger in her vagina. Finally, the State, in its closing argument, discussed the evidence supporting the two acts of child molesting.

[30] Considering the charging information, the evidence presented at trial, the trial court's instructions regarding the two offenses, and the State's closing argument, we conclude that there was no reasonable possibility that the jury used the same evidentiary facts to establish the essential elements of both offenses. Therefore, there was no violation of the Indiana Double Jeopardy Clause.

[31]    Affirmed.

Crone, J., and Brown, J., concur.