Pursuant to Ind.Appellate Rule 65(D), this
Memorandum Decision shall not be
regarded as precedent or cited before any
court except for the purpose of establishing
the defense of res judicata, collateral
estoppel, or the law of the case.



ATTORNEY FOR APPELLANT:

**JENNIFER A. JOAS**
Madison, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**LARRY D. ALLEN**
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| JAMES CODY ERTEL, | ) | |
| | ) | |
| Appellant-Defendant, | ) | |
| | ) | |
| vs. | ) | No. 15A05-1307-CR-372 |
| | ) | |
| STATE OF INDIANA, | ) | |
| | ) | |
| Appellee-Plaintiff. | ) | |

APPEAL FROM THE DEARBORN CIRCUIT COURT
The Honorable James D. Humphrey, Judge
Cause No. 15C01-1108-FB-34

**May 9, 2014**

**MEMORANDUM DECISION – NOT FOR PUBLICATION**

**BARNES, Judge**

**Case Summary**

James Cody Ertel appeals his twelve-year sentence following his conviction for one count of Class B felony child molesting. We affirm.

**Issue**

The sole issue before us is whether Ertel's sentence is inappropriate.

**Facts**

Ertel met twelve-year-old S.J. at a party in December 2010; S.J. turned thirteen shortly therafter. Ertel was twenty years old at the time but told S.J. he was sixteen. Ertel originally believed S.J. was older than thirteen. The two began talking on the phone and texting each other and considered themselves to be dating. Around April 2011, S.J. began sneaking out of her parents' house to meet Ertel. On one occasion in July 2011, S.J. snuck out of her house, met Ertel, and the two had sexual intercourse. After this encounter, S.J. told Ertel that she was thirteen.

Still, Ertel continued to talk to S.J. and meet her at night after she secretly left her home. On July 30, 2011, Calista Richards, an acquaintance of Ertel's, picked up S.J. from her parents' house and drove S.J. to her house so S.J. could spend time with Ertel. Later that evening, Ertel took S.J. on a four-wheeler ride into the woods, and the two again had sexual intercourse. Ertel used a condom that he had brought with him.

S.J.'s parents eventually learned about her relationship with Ertel and reported it to the Dearborn County Sheriff's Department. S.J.'s father confronted Ertel about the relationship while Ertel was at work. Ertel admitted to the relationship and admitted that he knew S.J.'s age. S.J.'s father then head-butted Ertel.

2

The State charged Ertel with two counts of Class B felony child molesting. During the proceedings, Ertel suggested that he could not assist with his defense because he was suffering from memory loss caused by the head-butting by S.J.'s father. Two doctors who evaluated Ertel, however, concluded that he was malingering, i.e. faking his memory loss. Ertel subsequently agreed to plead guilty to one count of Class B felony child molesting, and the State agreed to dismiss the second count. Sentencing was left to the trial court, which imposed a sentence of twelve years with three years suspended to probation. Ertel now appeals his sentence.

**Analysis**

Indiana Appellate Rule 7(B) gives appellate courts the authority to revise a defendant's sentence "if, after due consideration of the trial court's decision, the Court finds that the sentence is inappropriate in light of the nature of the offense and the character of the offender." Although Rule 7(B) does not require us to be "extremely" deferential to a trial court's sentencing decision, we still must give due consideration to that decision. Rutherford v. State, 866 N.E.2d 867, 873 (Ind. Ct. App. 2007). We also understand and recognize the unique perspective a trial court brings to its sentencing decisions. Id. "Additionally, a defendant bears the burden of persuading the appellate court that his or her sentence is inappropriate." Id.

The principal role of Rule 7(B) review "should be to attempt to leaven the outliers, and identify some guiding principles for trial courts and those charged with improvement of the sentencing statutes, but not to achieve a perceived 'correct' result in each case." Cardwell v. State, 895 N.E.2d 1219, 1225 (Ind. 2008). We "should focus on the forest—

3

the aggregate sentence—rather than the trees—consecutive or concurrent, number of counts, or length of the sentence on any individual count." Id. Whether a sentence is inappropriate ultimately turns on the culpability of the defendant, the severity of the crime, the damage done to others, and myriad other factors that come to light in a given case. Id. at 1224. When reviewing the appropriateness of a sentence under Rule 7(B), we may consider all aspects of the penal consequences imposed by the trial court in sentencing the defendant, including whether a portion of the sentence was suspended. Davidson v. State, 926 N.E.2d 1023, 1025 (Ind. 2010). Our review of a sentence under Rule 7(B) is not limited to a rundown of the aggravating and mitigating circumstances found by the trial court but instead entails an independent review of the record. McMahon v. State, 856 N.E.2d 743, 750 (Ind. Ct. App. 2006).

Although raising a Rule 7(B) challenge to his sentence, Ertel takes issue with some of the aggravating circumstances found by the trial court. We agree with Ertel as to some of the issues he raises. In particular, the trial court found it aggravating that Ertel told police he always carried a condom with him and that he listed his relationship status on Facebook as "engaged." We fail to perceive how these facts indicate that Ertel is "predatory," as stated by the trial court. App. p. 184. Ertel also asserts that there is no evidence he enlisted any third parties to assist in his molestation of S.J., as found by the trial court. It is true that there is no direct evidence of any such solicitation in the record. It is highly suspicious, however, that Ertel's acquaintance, Richards, drove S.J. to her house and Ertel just happened to be there, although Richards claimed at the sentencing hearing to have no knowledge that Ertel intended to have sex with S.J. that night.

4

Regardless of any deficiencies in the trial court's sentencing statement, our review of the record convinces us that Ertel's sentence is not inappropriate. As for the nature of the offense, Ertel spent several months in a "dating" relationship with an underage girl, which some would call "grooming." He lied about his own age, telling S.J. he was sixteen instead of twenty, which can be viewed as attempting to make S.J. feel more comfortable with him by lessening their apparent age difference. Even if Ertel initially was confused about S.J.'s true age as he claims, he continued to see her for a period of time after he undoubtedly knew she was only thirteen, clearly taking care to hide their relationship from her parents, and had sexual intercourse with her after taking her for a secluded drive on a four-wheeler. Although as Ertel argues there was no violence associated with this molestation and he was not in a position of trust with S.J., we still find the facts of this case to be disconcerting.

Turning to Ertel's character, he directs us to his lack of criminal history, his work history, letters that testified to his good character, and his guilty plea. We acknowledge that a complete lack of criminal history and a guilty plea may reflect positively upon a defendant's character. See Lopez v. State, 869 N.E.2d 1254, 1259 (Ind. Ct. App. 2007), trans. denied. However, while in jail awaiting trial, Ertel was deprived of good time credit because of fighting. With respect to Ertel's guilty plea, the reason guilty pleas often are viewed as a positive reflection upon character is because it demonstrates an acceptance of responsibility for one's actions. See Anglemyer v. State, 875 N.E.2d 218, 221 (Ind. 2007). When a guilty plea does not demonstrate a defendant's acceptance of responsibility, it is not significantly mitigating. Id. Here, Ertel initially attempted to avoid responsibility for

5

his actions by faking that he suffered from memory loss. And, even after entering into the guilty plea, Ertel still seemed to foist responsibility for what happened onto S.J. for appearing older than she was and seducing him; this "blame the victim" approach also was apparent in some of the character letters for Ertel.

In sum, although the facts of this case and Ertel's character are not especially egregious, neither are they especially "positive." The trial court here, although imposing a total sentence of twelve years, suspended three years of that term, leaving Ertel to actually serve less than the ten-year advisory sentence for a Class B felony. Our analysis of the nature of the offense and the character of the offender leads us to conclude that this sentence is not inappropriate.

### Conclusion

Ertel's sentence of twelve years, with three suspended, is not inappropriate. We affirm.

Affirmed.

BROWN, J., concurs.

ROBB, J., dissent with separate opinion.

6

# IN THE
# COURT OF APPEALS OF INDIANA

JAMES CODY ERTEL,  )
 )
 )
    Appellant-Defendant,  )
 )
      vs.  )      No. 15A05-1307-CR-372
 )
STATE OF INDIANA,  )
 )
    Appellee-Plaintiff.  )

**ROBB, Judge, dissenting**

I respectfully dissent from the majority's conclusion that Ertel's sentence is not inappropriate in light of the nature of the offense and of his character. The record shows that after Ertel and S.J. became boyfriend and girlfriend, Ertel made no attempt to hide their relationship. He introduced her to his friends and brought her to hang out with them in a group. His friends believed she was seventeen. Transcript at 61. Ertel also introduced her to his parents and, when asked, S.J. told them she was seventeen. Tr. at 27-28. Under the belief that the two were both of age, they engaged in consensual intercourse. After the

7

two had sex, S.J. told Ertel her true age of thirteen. Ertel then told S.J. he was actually twenty. Though it was not prudent, the two willingly continued their relationship for about three weeks before S.J.'s parents reported Ertel to the police. Appellant's Brief at 2. Ertel made no attempt to lie to the police or evade the truth when S.J.'s parents learned of their relationship.

As the majority notes, under Rule 7(B) we should focus on the forest, not the trees, in our review of sentencing. Slip op. at 3-4. We also may engage in an independent review of the record when reviewing a sentence under Rule 7(B). McMahon v. State, 856 N.E.2d 743, 750 (Ind. Ct. App. 2006). I do not believe any court should find significant aggravators based on an inaccurate Facebook relationship status or a twenty-year old man carrying a condom, and it is our duty under the Indiana Constitution to identify problematic issues such as these to help guide trial courts in sentencing. The majority concludes that while these factors do not indicate Ertel's future dangerousness or that he is "predatory" as the trial court found, Ertel's sentence nonetheless is not inappropriate. I cannot agree with this conclusion. I also do not agree with the majority's suggestion that Ertel's behavior in the first months of the relationship was "grooming," as the evidence shows he did not know S.J. was underage during that period of time.

Ertel has met his burden in persuading me that the sentence he received is inappropriate in light of the nature of the offense and his character. As to the nature of the offense, there is nothing to show that his crime was any worse than other cases involving Class B felony child molestation: Ertel and S.J. had just two instances of consensual sexual intercourse in four months of dating; Ertel did not use force or the threat of force in

8

committing the act; S.J. was not physically injured; Ertel was not in a position of care, custody, or control of S.J. to violate a position of trust; and there is no evidence he told S.J. not to tell anyone or threatened to harm her if she told anyone of their relationship. The presence of any or all of these factors are appropriate considerations for an enhanced sentence. See Hamilton v. State, 955 N.E.2d 723, 726-28 (Ind. 2011) None of these factors were present.

As to Ertel's character, he was twenty years old at the time of the crime, had steady employment for the three years leading up to his arrest, no substance abuse issues, pled guilty and accepted responsibility, and never tried to deny he had a relationship with S.J. Additionally, he had no prior criminal history, either as a juvenile or an adult. More than twenty family and community members submitted letters on Ertel's behalf attesting to his good character and some offered a support system in the community for when Ertel is released from custody.

I conclude Ertel made a sufficient case for revising his sentence. I would remand with instructions for Ertel's sentence to be ten years, with three years suspended.