## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



**FILED**

Sep 24 2019, 7:42 am

**CLERK**
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Brian A. Karle
Ball Eggleston, PC
Lafayette, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Tiffany A. McCoy
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

Casey Lee Kimbrell,

*Appellant-Defendant,*

v.

State of Indiana,

*Appellee-Plaintiff.*

September 24, 2019

Court of Appeals Case No.
19A-CR-10

Appeal from the
Tippecanoe Superior Court

The Honorable
Steven P. Meyer, Judge

Trial Court Cause No.
79D02-1504-FB-4

**Kirsch, Judge.**

[1] Casey Lee Kimbrell ("Kimbrell") pleaded guilty to two counts of burglary,[1] each as a Class B felony. The trial court initially sentenced Kimbrell in 2016. In 2018, the trial court discharged him from a forensic diversion program and granted his motion to correct erroneous sentence. The court resentenced Kimbrell in 2018 to two consecutive ten-year sentences, ordering him to serve thirteen of those years executed at the Indiana Department of Correction ("the DOC"), three years on community corrections, and four years on supervised probation. Kimbrell appeals the sentence imposed during resentencing, raising the following restated issues:

> I. Whether the case should be remanded to correct an error in the calculation of Kimbrell's credit time;
>
> II. Whether the trial court abused its discretion when it ordered Kimbrell to serve his two sentences consecutively; and
>
> III. Whether Kimbrell's sentence is inappropriate in light of the nature of the offenses and his character.

[2] We affirm Kimbrell's sentence but remand this case to the trial court with instructions to recalculate Kimbrell's credit time.

---

[1] *See* Ind. Code § 35-43-2-1(1) (2013). We note that the 2014 amendments to the criminal code changed burglary of a dwelling from a Class B felony to a Level 4 felony.

# Facts and Procedural History

[3] Kimbrell appeals the sentence imposed by the trial court during resentencing in connection with two May 2013 burglary convictions in the underlying case, Cause Number 79D02-1504-FB-4 ("FB-4"). A determination of the issues before us, however, requires us to also discuss Kimbrell's prior conviction for a February 2014 burglary under Cause Number 79D02-1402-FB-2 ("FB-2").

## *FB-2*

[4] On February 4, 2014, officers responded to a caller who reported that two individuals were in the woods behind a home, and the owners were not home. *Appellant's Conf. App*. *Vol. 2* at 170. Officers saw two males run out of the home and flee. Officers pursued and arrested Kimbrell. *Id*. at 170-71. On February 11, 2014, the State charged eighteen-year-old Kimbrell under FB-2 with Class B felony burglary, Class A misdemeanor resisting law enforcement, and Class D felony attempted theft. *Appellant's App. Vol. 2* at 119. While being questioned for the FB-2 burglary, Kimbrell cooperated with law enforcement and told them he had committed two other burglaries in May 2013, when he was seventeen years old. *Tr. Vol. 2* at 34-35. The State did not add those charges to FB-2; however, the State later charged Kimbrell with those crimes under FB-4, the sentence at issue in this appeal.[2] *Id*. In FB-2, Kimbrell pleaded guilty to one count of Class B felony burglary and, on December 15, 2014, he was sentenced

---

[2] The May 2013 burglaries were ultimately charged on April 28, 2015 under FB-4, which is the underlying sentencing case.

to a ten-year sentence, with eight years executed in the DOC and two years suspended to supervised probation. *Appellant's App. Vol. 2* at 122. While serving his sentence for FB-2, Kimbrell participated in and completed the Purposeful Incarceration Program. *Tr. Vol. 2* at 106.

### *FB-4*

While being questioned about his FB-2 burglary, Kimbrell told the police that he had been involved in the May 2013 burglaries charged in FB-4. At that time, Kimbrell admitted that, on May 21, 2013, he had entered the residence of T.F. and M.F. through a window and had stolen collectable coins and jewelry, which he sold to a shop at the mall. *Tr. Vol. 2* at 14; *Appellant's App. Vol. 2* at 20. Kimbrell also admitted that less than twenty-four hours later, on May 22, 2013, he and another male broke into the residence of C.W. and N.W. and took cash and three pairs of Nike shoes. *Tr. Vol. 2* at 13-14; *Appellant's App. Vol. 2* at 20. On April 28, 2015, the State charged Kimbrell under FB-4 with conspiracy to commit burglary, a Class B felony; two counts of burglary, each as a Class B felony; two counts of residential entry, each as a Class D felony; and two counts of theft, each as a Class D felony. *Appellant's App*. *Vol. 2* at 12-19.

On November 17, 2016, Kimbrell entered a plea of guilty to the two counts of Class B felony burglary, and the remaining counts were dismissed. *Id*. at 64. With no plea agreement, sentencing was left to the discretion of the trial court. *Tr. Vol. 2* at 5. The parties agreed that Kimbrell should be placed in a forensic diversion program ("Forensic Diversion") because he had successfully completed the Purposeful Incarceration Program in FB-2 and had been

accepted into Forensic Diversion for FB-4. *Id.* The trial court took Kimbrell's FB-4 plea under advisement. Thereafter, Kimbrell informed the court that "he filed a motion to modify his sentence under FB-2 in order to get him into Forensic Diversion sooner."[3] *Tr. Vol. 2* at 16.

[7] The trial court accepted Kimbrell's guilty plea in FB-4 and held a sentencing hearing on December 9, 2016. During that hearing, the trial court granted Kimbrell's motion to modify his sentence under FB-2 and stayed the "remaining balance of the sentence on the condition that [Kimbrell] successfully complete the Tippecanoe County Forensic Diversion Program."[4] *Tr. Vol. 2* at 29. As to the FB-4 sentence, the trial court found the following aggravating factors: Kimbrell's criminal history; the fact that he was out on bond for another crime at the time he committed the instant offenses; the repetitive nature of the offenses; and his past violations of probation. *Appellant's App.* at 66. As mitigating factors, the trial court found: Kimbrell's young age; the fact that he pleaded guilty without a plea agreement; and the fact that he cooperated with law enforcement. *Id.* at 67. The trial court found "the aggravating factors and mitigating factors balance." *Id.* Kimbrell was

---

[3] During the November 17, 2016 guilty plea hearing, defense counsel informed the trial court that Kimbrell and the State had agreed that, during the FB-4 sentencing hearing, they would accept Kimbrell's requested modification of the FB-2 sentence and, thereby, would allow Kimbrell to participate in Forensic Diversion for both FB-2 and FB-4. *Tr. Vol. 2* at 16.

[4] The trial court reiterated the agreement between Kimbrell and the State that any remaining time on the FB-2 sentence would be stayed on the condition that Kimbrell successfully complete Forensic Diversion. *Tr. Vol. 2* at 29. The trial court stated that if Kimbrell failed to comply with any of the terms of Forensic Diversion, Kimbrell would have to serve the remaining balance of the FB-2 sentence executed at the DOC. *Id.* at 29-30. Kimbrell believed that he had ten months remaining on the FB-2 sentence. *Id.* at 30.

sentenced to ten years for each burglary conviction to be served consecutively, for an aggregate sentence of twenty years, with sixteen years to be served at the DOC, followed by four years "suspended and served on supervised probation." The trial court stayed Kimbrell's sentence pending successful completion of Forensic Diversion.

[8] At the close of the sentencing hearing, Kimbrell's counsel, Chad Montgomery, informed the trial court that he had spoken with the prosecutor and with a woman at Forensic Diversion and that the three of them were "sticking out [their] necks" to get Kimbrell into Forensic Diversion. *Tr. Vol. 2* at 35. Montgomery said he had told Kimbrell the same thing, emphasizing that prosecutors rarely agree to such an arrangement. *Id*.

[9] On September 4, 2018, the trial court entered an order removing Kimbrell from Forensic Diversion because he violated program rules. *Appellant's App. Vol. 2* at 117-18. That order stated that Kimbrell acknowledged that he had violated Forensic Diversion by: (1) failing to report for a urine screen on August 15, 2017; (2) using alcohol on September 1, 2017; (3) using the illegal drug spice on September 2, 2017; (4) violating the law and a condition of temporary leave by possessing or using a controlled substance or alcohol and having unapproved contacts on February 10, 2018; and (5) possessing or using a controlled substance, refusing to submit to drug testing, and having unapproved contacts on August 3, 2018. *Id*. at 118. Having been dismissed from Forensic Diversion, Kimbrell's case was returned to the trial court for disposition of the sentences in FB-2 and FB-4. *Id*.

[10] On October 17, 2018, Kimbrell filed a motion to correct erroneous sentence, arguing that the 2016 sentencing order was "facially defective" because the trial court imposed consecutive sentences while making a specific finding that the "aggravating and mitigating factors balanced." *Id*. at 84-85. On October 23, 2018, the trial court held a hearing to address whether it had the power to impose consecutive sentences for "two separate burglaries [committed on] different days," even after having found that aggravating and mitigating factors balanced. *Tr. Vol. 2* at 56. Kimbrell made clear to the trial court that he was not contesting the imposition of a ten-year sentence; instead, he was contesting the "consecutive nature" of the FB-4 sentences. *Id*. at 59. Kimbrell argued that the trial court's only option in resentencing Kimbrell under FB-4 was to impose concurrent sentences. *Id*. at 60. Defense counsel argued that "sequency [sic] does not require mandatory consecutive the way these things were charged." *Id*. at 57. Furthermore, Kimbrell argued that he would be prejudiced if, on remand, the trial court was allowed to change the aggravating and mitigating circumstances to support consecutive sentences. *Id*. at 58. Making the case for consecutive sentences, the State argued that the imposition of concurrent sentences would give Kimbrell the "benefit for committing two crimes on two separate days against two separate victims in two separate houses. Both are crimes of violence committed a significant period of time apart.[5] And a

---

[5] We note that the consecutive sentences under consideration were those imposed for the two May 2013 burglaries. Contrary to the State's assertion, the May 2013 burglaries were committed just one day apart and not, as the State notes, "a significant period of time apart." *Tr. Vol. 2* at 61. The trial court, however, understood that the sentences were for crimes committed close in time. *See id.* at 62 (responding to defense

concurrent sentence would diminish the seriousness of the offenses which the Court did find as an aggravator in this case." *Id.* at 61.

[11] The trial court agreed with the State, saying,

> I think that the intent of the Court was to run them consecutive because they were separate crimes and they were repetitive. . . . [T]here was a mention in there, an aggravating factor found the repetitive nature of the crimes. And, and I believe that, that was the intent of the Court and so my question is, whether [the trial court] can correct that at this time since you brought . . . this issue up at this time.
>
> . . . .
>
> No. What I believe it is the intent of the Court was, the reason why they were run consecutive was cause . . . they were repetitive and . . . they occurred at separate times. They weren't part of the whole, of, of an entire transaction. I believe that's why they were run consecutive. And I also believe that Court found a ten-year sentence on each would be appropriate, which was the, at that time, the presumptive sentence. I mean you, you raise the issue about the . . . consecutive nature of the charges.

*Id.* at 58-59.

[12] On November 8, 2018, a hearing was held to address credit time issues. *Id.* at 68. In anticipation of that hearing, the Tippecanoe County Probation

---

counsel's statement that "these two crimes are talked about separate in time and everything, they were within forty-eight hours of each other," the trial judge said, "I understand that. But they were in fact separate in time and separate victims.").

Department filed jail credit reports to reflect the time that Kimbrell had actually served under each of FB-2 and FB-4. The jail credit report filed in FB-2 and FB-4 reflected that Kimbrell had served a total of 1,877 and ninety-five days, respectively. *Appellant's Conf. App. Vol. 2* at 91, 128-29. During the hearing, the parties agreed that the reports were accurate, and, comparing the FB-2 report against the FB-4 report, the trial court observed that the two reports had no overlap of time served. *Tr. Vol. 2* at 73.

[13] The trial court granted Kimbrell's motion to correct erroneous sentence and held the resentencing hearing on December 4, 2018. *Id.* at 92-125. Initially, the trial court addressed credit time. First, it considered the 1,877 days from the FB-2 jail credit report and concluded that Kimbrell accrued enough days to have fully served his FB-2 executed sentence—leaving 417 days from the FB-2 report to apply to Kimbrell's FB-4 sentence. *Id.* at 96-97. In addition, the parties agreed that an additional 121 days had accrued since August 6, 2018 (the last date considered in the jail credit reports). *Id.* at 98. Consequently, the resentencing order and abstract of judgment indicated 538 days of accrued time plus 538 days of good time credit. *Appellant's Conf. App. Vol. 2* at 97, 99. The trial court's final credit time calculation, however, did not appear to account for the ninety-five days from the FB-4 jail credit report.

[14] Next, the trial court considered the aggravating and mitigating circumstances.[6] Addressing aggravating factors, the trial court reiterated: Kimbrell's criminal history; the fact that he was out on bond for another crime at the time he committed the instant offenses; the repetitive nature of the offenses; and his past violations of probation. *Tr. Vol 2* at 114-16. To that, the trial court added that Kimbrell "committed additional crimes after the commission of these crimes and prior rehabilitation attempts have failed." *Id.* at 117. As mitigating factors, the trial court reiterated Kimbrell's young age; the fact that he pleaded guilty without a plea agreement; and the fact that he cooperated with law enforcement. *Id.* at 118. The trial court found no additional mitigating circumstances while recognizing that it had a more aggravators to consider. *Id.* Yet, the trial court again sentenced Kimbrell to a twenty-year aggregate sentence, ordering Kimbrell to serve thirteen of those years executed at the DOC, at least three years on community corrections, and four years on supervised probation. *Appellant's App. Vol. 2* at 96. Kimbrell now appeals that sentence.

---

[6] Noting that Kimbrell's sentence fell within the sentencing guidelines, the trial court questioned whether the sentence could be reviewed under a motion to correct erroneous sentence. *Tr. Vol. 2* at 99-100. Even so, the trial court agreed that it could address sentencing because "the Order did not cite an aggravator or reason to run the sentences consecutive[ly]." *Id.* at 100. Kimbrell does not appeal the trial court's decision to grant the motion to correct erroneous sentence.

# Discussion and Decision

## I. Credit Time

[15]　Kimbrell contends that the trial court erred in calculating his credit time. "Credit time" is "the sum of a person's accrued time, good time credit, and educational credit."[7]  Ind. Code § 35-50-6-0.5(2).  "Accrued time" is "the amount of time that a person is imprisoned or confined."  Ind. Code § 35-50-6-0.5(1).  "Good time credit" means "a reduction in a person's term of imprisonment or confinement awarded for the person's good behavior while imprisoned or confined."[8]  Ind. Code § 35-50-6-0.5(4).  As part of the resentencing, the trial court was tasked with calculating Kimbrell's accrued time and good time credit under FB-2 and FB-4.  Kimbrell argues, and the State agrees, that although Kimbrell served ninety-five days in prison under FB-4, the trial court mistakenly omitted those ninety-five days from the final credit-time calculation.  As such, we remand this case to the trial court with instructions to change the credit time calculation for Kimbrell's sentence to include ninety-five accrued days, plus ninety-five days of good time credit, if applicable.  *See Tr. Vol. 2* at 71.

---

[7] We note that the definitions of credit time, accrued time, and good time credit became effective after Kimbrell committed the 2013 offenses.  Nevertheless, our legislature has made clear that the addition of these terms was intended as a clarification and "does not affect any time accrued before July 1, 2015."  Ind. Code § 35-50-6-0.6.

[8] Kimbrell makes no claim that he has earned or is owed any educational credit.

[16]   The State raises for the first time on appeal a second credit time issue.  It argues that the jail credit report for FB-2 reflects that Kimbrell was improperly given double credit for the time he served under FB-2.[9]  During the resentencing hearing, the trial court and the parties reviewed the jail credit reports.  In addition to agreeing that Kimbrell was entitled to ninety-five days of credit time under FB-4, the parties agreed that Kimbrell was entitled to 1,877 days of accrued credit under FB-2.  To ensure that Kimbrell did not get double credit, the trial court and the parties compared the FB-2 jail credit report against the FB-4 jail credit report.  The trial court observed that the two reports had no overlap of time served.  *Tr. Vol. 2* at 73.  However, the trial court did not examine whether there was any overlap in the time served for just FB-2 or just FB-4.  The FB-2 jail credit report appears to contain just such a double credit since Kimbrell was given credit for:  (1) 748 days served from November 23, 2014 to December 9, 2016; and (2) 705 days served from January 3, 2015 to December 7, 2016 (705 days).  *Appellant's Conf. App. Vol. 2* at 128.  Because the 705-day period from November 23, 2014 to December 7, 2016 is subsumed within the period from January 3, 2015 to December 7, 2016, Kimbrell was given double credit.

[17]   The State argues that this double credit should be remedied on remand. Kimbrell counters that this issue is foreclosed on appeal by the doctrine of

---

[9] The State mistakenly notes that the repetitive dates are found in the jail credit report for FB-4; however, our review of the jail credit reports shows that the double credit time was given in connection with FB-2.  *See Appellant's Conf. App. Vol. 2* at 128; *Appellee's Br.* at 12 n.4.

invited error. Specifically, he contends, "[A] party may not take advantage of an error that she commits, invites, or which is the natural consequence of her own neglect or misconduct." *Appellant's Reply Br.* at 10 (quoting *Wright v. State*, 828 N.E.2d 904, 907 (Ind. 2005)). Here, we find no invited error. The jail credit report for FB-2, which both parties reviewed, provided in pertinent part:

The defendant has served his time under [FB-4] as follows:

| | | | |
|---|---|---|---|
| 02/04/14 | to | 05/16/14 | 102 actual days |
| 11/23/14 | to | *12/09/16* | 748 actual days |
| 01/03/15 | to | 12/07/16 | 705 actual days |
| 12/15/16 | to | 04/10/17 | 117 actual days |

*Appellant's Conf. App. Vol. 2* at 128. Both parties reviewed this jail credit report and neither disputed that the number of accrued days of credit under FB-2 was 1,877.[10] *Tr. Vol. 2* at 97. Looking at the italicized date, it appears that the probation department made a scrivener's error in the date of 12/09/16. The progression of the dates suggests that the italicized date of 12/09/16 should have been 12/09/14, a date that would have prevented Kimbrell from getting double credit time.

---

[10] The parties added the qualification that the number of 1,877 days was from "probation's report of August 6th of 2018." *Tr. Vol. 2* at 98.

[18]     An inmate cannot be credited twice for the same accrued time.  Our legislature has determined:

> If [a] convicted person is erroneously sentenced, the mistake does not render the sentence void.  The sentence shall be corrected after written notice is given to the convicted person.  The convicted person and his counsel must be present when the corrected sentence is ordered.  A motion to correct sentence must be in writing and supported by a memorandum of law specifically pointing out the defect in the original sentence.

Ind. Code § 35-38-1-15.

[19]     The sentencing for FB-02 and FB-4 have become inextricably intertwined.  On remand to the trial court for recalculation of the appropriate credit time due to Kimbrell under FB-4, we order the trial court to also re-evaluate the amount of credit time Kimbrell is due under FB-2.  As our Supreme Court instructed in *State v. Lotaki*, 4 N.E.3d 656 (Ind. 2014):

> The trial court may discharge this responsibility by (1) issuing a new sentencing order without taking any further action, (2) ordering additional briefing on sentencing and then issuing a new order without holding a new sentencing hearing, or (3) ordering a new sentencing hearing at which additional factual submissions are either allowed or disallowed and then issuing a new order based on the presentations of the parties.

*Lotaki*, 4 N.E.3d at 658.

# II. Consecutive Sentences

[20] Kimbrell next contends that the trial court abused its discretion when it ordered his two burglary sentences under FB-4 to run consecutively. The decision of whether to impose consecutive or concurrent sentences lies within the trial court's sound discretion and is reviewed only for an abuse of that discretion. *McGriff v. State,* 20 N.E.3d 156, 157 (Ind. Ct. App. 2014), *trans. denied.* "A single aggravating circumstance may support the imposition of consecutive sentences." *Id.* "The trial court abuses its discretion if its decision is clearly against the logic and effect of the facts and circumstances before the court, or the reasonable, probable, and actual deductions to be drawn therefrom." *Id.*

[21] During the initial sentencing hearing, the trial court found the following aggravating factors: Kimbrell's criminal history; the fact that he was out on bond for another crime at the time he committed the instant offenses; the repetitive nature of the offenses; and his past violations of probation. *Appellant's App. Vol. 2* at 66. During resentencing, the trial court added the following aggravators: rehabilitation of Kimbrell had failed; and Kimbrell committed a new criminal offense after committing the May 2013 burglaries. *Id.* at 95. As mitigating factors during both the initial hearing and the resentencing, the trial court found: Kimbrell's young age; the fact that he pleaded guilty without a plea agreement; and the fact that he cooperated with law enforcement. *Id.* at 67. The trial court found these factors "balanced." Kimbrell now argues that, after finding that the aggravating and mitigating circumstances were

"balanced," the trial court was precluded from imposing consecutive sentences without explaining why. *Appellant's Br.* at 13-14.

[22] Kimbrell cites to *Marcum v. State*, 725 N.E.2d 852, 864 (Ind. 2000) as support for his claim that "[c]onsecutive sentences are improper where the trial court explicitly finds that the aggravating and mitigating factors balance." *Appellant's Br.* at 13 (citing *Marcum*, 725 N.E.2d at 863-64). Marcum went on a crime "spree," during which he stole a van from an auto dealership, carjacked a vehicle, conspired to burglarize a residence, attempted to murder a co-conspirator, murdered another co-conspirator, and committed theft. The jury found Marcum guilty of auto theft as a lesser included offense of carjacking and guilty of the remaining counts as charged. The trial court sentenced him to fifty-five years for murder, thirty years for attempted murder, ten years for conspiracy to commit burglary, three years for auto theft, and six months for theft. *Marcum*, 725 N.E.2d at 856. The trial court ordered the sentences for murder, conspiracy to commit burglary, and auto theft to be served consecutively for an aggregate sentence of seventy-one years. *Id*. The trial court found Marcum's youthful age as the sole mitigating factor. *Id*. The trial court identified no aggravating circumstances. In response to a query from defense counsel, the trial court noted, "This was a series of incidents, events or occurrences, a crime of spree [sic]." *Id*. at 864.

[23] Our Supreme Court reversed the sentence, after finding that the aggravating and mitigating circumstances were "balanced." *Id*. at 863. The Supreme Court explained:

> In order to impose consecutive sentences, the trial court must find at least one aggravating circumstance. The same aggravating circumstance may be used to both enhance a sentence and justify consecutive terms. Here, however, because the trial court found the aggravating and mitigating circumstances to be in balance, there is no basis on which to impose consecutive terms. Accordingly, this case is remanded to the trial court with direction to impose concurrent sentences on all counts.

*Marcum*, 725 N.E.2d at 864 (internal citations omitted).

[24]  *Marcum* is distinguishable. In *Marcum*, although the trial court found that the aggravators and mitigators were balanced, the trial court actually found no aggravating circumstances. Furthermore, the trial court determined that the crimes were committed as part of a spree. Here, during the December 2016 sentencing hearing, the trial court said, "The victims in this case, there were two (2) separate burglaries."[11] *Tr. Vol. 2* at 33. The State and defense counsel each stated, "Correct." *Id.* "The aggravating circumstance of multiple victims generally suffices to support consecutive sentences." *Lewis v. State*, 116 N.E.3d 1144, 1156 (Ind. Ct. App. 2018), *trans. denied*. Our Supreme Court has held, "when the perpetrator commits the same offense against two victims, enhanced and consecutive sentences seem necessary to vindicate the fact that there were

---

[11] In his Reply Brief, Kimbrell incorrectly states, "The trial court's 'multiple victims' rationale did not come into play until **after** the error was raised in the Motion to Correct Erroneous Sentence . . . ." *Appellant's Reply Br.* at 7. In fact, as this language shows, the trial court mentioned this factor during the December 2016 sentencing hearing.

separate harms and separate acts against more than one person." *Id.* (citing *Serino v. State*, 798 N.E.2d 852, 857 (Ind. 2003) (when perpetrator commits same offense against two victims, enhanced and consecutive sentences seem necessary to vindicate the fact that there were separate harms and separate acts against more than one person)). A trial court may find that the aggravating and mitigating factors balance for purposes of the length of a sentence and then find an additional, free-standing aggravator justifying the imposition of consecutive sentences. *See Lopez v. State*, 869 N.E.2d 1254, 1258-59 (Ind. Ct. App. 2007), *trans. denied*. A court may also find that one of the same aggravators used in determining the length of the sentence justifies imposing consecutive sentences. *See Frentz v. State*, 875 N.E.2d 453, 472 (Ind. Ct. App. 2007), *trans. denied*.

[25] Here, the trial court did not enhance Kimbrell's Class B felonies; instead, to reflect that Kimbrell committed two separate offenses against two separate victims, the trial court ordered the sentences to run consecutively. The trial court did not abuse its discretion during sentencing.[12]

## III. Appellate Rule 7(B)

[26] Finally, Kimbrell argues that his aggregate sentence of twenty years is inappropriate. Pursuant to Indiana Appellate Rule 7(B), our court "may revise

---

[12] We further note that Kimbrell knew of the possibility of consecutive sentences before the trial court imposed its sentence and did not object. Defense counsel, discussing sentencing during the December 2016 hearing, stated, "[P]robation recommends ten (10) and ten (10) served consecutively anyway Judge. My recommend [sic] would just be maybe ten (10) uh, ten (10) and ten (10) concurrently. But, again, Judge we're not—we just hope that [Kimbrell] gets into [Forensic Diversion] and completes it so we'll leave it to your discretion obviously Judge." *Tr. Vol. 2* at 36.

a sentence authorized by statute if, after due consideration of the trial court's decision, the [c]ourt finds that the sentence is inappropriate in light of the nature of the offense and the character of the offender." "The principal role of a Rule 7(B) review 'should be to attempt to leaven the outliers and identify some guiding principles for trial courts and those charged with improvement of the sentencing statutes, but not to achieve a perceived "correct" result in each case.'" *Dilts v. State*, 80 N.E.3d 182, 188 (Ind. Ct. App. 2017) (quoting *Cardwell v. State*, 895 N.E.2d 1219, 1225 (Ind. 2008)), *trans. denied*. We independently examine the nature of Kimbrell's offenses and his character under Appellate Rule 7(B) with substantial deference to the trial court's sentence. *Satterfield v. State*, 33 N.E.3d 344, 355 (Ind. 2015). "In conducting our review, we do not look to see whether the defendant's sentence is appropriate or if another sentence might be more appropriate; rather, the test is whether the sentence is 'inappropriate.'" *Barker v. State*, 994 N.E.2d 306, 315 (Ind. Ct. App. 2013), *trans. denied*. Whether a sentence is inappropriate ultimately depends upon "the culpability of the defendant, the severity of the crime, the damage done to others, and a myriad of other factors that come to light in a given case." *Dilts*, 80 N.E.3d at 188-89 (citing *Cardwell*, 895 N.E.2d at 1224). Kimbrell bears the burden of persuading us that his aggregate twenty-year sentence is inappropriate in light of the nature of the offense and his character. *Id.* at 188.

[27] We begin by noting that "the advisory sentence is the starting point the legislature has selected as an appropriate sentence for the crime committed." *Connor v. State*, 58 N.E.3d 215, 220 (Ind. Ct. App. 2016). Kimbrell pleaded

guilty to two counts of burglary, each as a Class B felony. A Class B felony carries a possible sentence of six to twenty years, with an advisory sentence of ten years. Ind. Code § 35-50-2-5. Kimbrell was sentenced to the advisory sentence of ten years for each of his convictions for Class B felony burglary; however, he was ordered to serve only thirteen of those years executed in the DOC, three years with community corrections, and the final four years on supervised probation.

[28] With regard to the nature of his crimes, Kimbrell argues that his "offenses are far less egregious than the 'typical' burglary offense." *Appellant's Br*. at 16. Kimbrell notes that: (1) he cooperated with law enforcement and informed them that he had committed the two May 2013 burglaries; (2) the burglaries were committed less than twenty-four hours apart; (3) no injury resulted from either burglary; (4) no one was in the residences when the burglaries occurred; (5) no firearms were used; and (6) "only a few non-valuable items were taken." *Appellant's Br*. at 16. Kimbrell also notes, "No restitution order was entered or requested by the State, indicating the items taken were either returned or of minimal value." *Id*. As such, Kimbrell maintains that these circumstances do not warrant a twenty-year sentence against him, especially since he was seventeen at the time the offenses were committed. *Id*. at 17.

[29] Kimbrell burglarized two homes. He entered the first residence through a window and stole jewelry and collectable coins that he sold that day. Less than twenty-four hours later, he and another male broke into a residence and stole cash and three pairs of Nike shoes. Here, Kimbrell was sentenced to the

advisory sentence. Our Supreme Court has recognized that an advisory sentence is not inappropriate for burglaries that threaten no harm to individuals. *See Frye v. State*, 837 N.E.2d 1012, 2014 (Ind. 2005) (Supreme Court exercised authority under Appellate Rule 7(B) to revise enhanced sentence to [advisory] sentence because, despite defendant's extensive criminal history, he broke in through a window of a house when no one was home and while unarmed stole approximately $395 worth of items); *Hollin v. State*, 877 N.E.2d 462, 465-66 (Ind. 2007) (reasoning that when no one was home and the defendant was unarmed during the burglary, the nature of the offense balanced the defendant's extensive prior criminal history; the Indiana Supreme Court revised the sentence to the advisory of ten years). We find Kimbrell's sentence of twenty years, of which seven years were ordered to alternative placement, is not inappropriate in light of the nature of the offense.[13]

[30] Regarding the character of the offender, the trial court found the following as aggravating circumstances: Kimbrell's criminal history; the fact that he was out on bond for another crime at the time he committed the instant offenses; the repetitive nature of the offenses; his past violations of probation; rehabilitation of Kimbrell had failed; and Kimbrell committed a new criminal offense after

---

[13] We note that the court did not intend to add additional time to Kimbrell's sentence on the basis of the nature of the offenses. During the December 2018 resentencing hearing, the trial court stated:

> I don't think though, in this particular case, the seriousness of the crime itself warrants any additional aggravator as, as the State is arguing. I think that it's just, it's the burglary and he's facing the years he's facing because the, the legislature has determined that to be so.

*Tr. Vol. 2* at 115.

committing the May 2013 burglaries. *Appellant's App. Vol. 2* at 66, 95. Kimbrell contends that the trial court could not use his juvenile record as part of sentencing, saying, "Indiana law is clear that '[a] child may not be considered a criminal as a result of an adjudication in a juvenile court, nor may an adjudication in juvenile court be considered conviction of a crime." *Appellant's Reply Br.* at 9 (citing Ind. Code § 31-32-2-6(a)). Even so, our Supreme Court has noted:

> Since nearly the beginning of our present criminal code, Indiana courts have recognized that criminal behavior reflected in delinquent adjudications can serve as the basis for enhancing an adult criminal sentence. *See, e.g., Simms v. State,* 421 N.E.2d 698, 703-04 (Ind. Ct. App. 1981). We have emphasized that it is the criminal behavior reflected in earlier proceedings rather than the adjudications that is the proper proof of a prior history of criminal behavior. *Jordan v. State,* 512 N.E.2d 407, 410 (Ind. 1987).

*Ryle v. State*, 842 N.E.2d 320, 321 (Ind. 2005); *see Sexton v. State*, 968 N.E.2d 837, 841 (Ind. Ct. App. 2012) (The Supreme Court has upheld the use of prior juvenile adjudications to enhance a sentence on multiple occasions.), *trans. denied*. Therefore, "A trial court may treat a defendant's juvenile record as an aggravating circumstance if the presentence investigation report contains specifics as to juvenile criminal activity and those specifics support evidence of a history of criminal activity." *Davenport v. State,* 689 N.E.2d 1226, 1232 (Ind. 1997), *clarified on reh'g,* 696 N.E.2d 870 (Ind. 1998).

[31]     As early as 2009, Kimbrell, who was at that time fourteen, was adjudicated a delinquent child for burglary, conspiracy to commit burglary, theft, conspiracy to commit theft, and minor in possession of alcohol. About two months after that adjudication, on January 28, 2010, there was a true finding that Kimbrell had violated his probation. *Appellant's Conf. App*. at 134. Over the next two years, Kimbrell was in and out of secure detention and electronic monitoring after the trial court made true findings that he violated his probation on May 19, 2010; July 1, 2010; December 3, 2010; April 7, 2011; May 16, 2011; and July 19, 2011. *Id*. On July 19, 2011, Kimbrell was again adjudicated a delinquent for possessing marijuana and dealing marijuana. *Id*. at 135. On July 27, 2012, Kimbrell was charged with residential entry, and the trial court gave him a warning. *Id*. On January 9, 2013, Kimbrell pleaded guilty, as an adult, to manufacturing or delivering a schedule IV substance and possession of scheduled I, II, III, and IV substances. *Id*. at 136. In February 2014, when he was eighteen years old, Kimbrell committed Class B felony burglary. *Id*. at 136.

[32]     During Kimbrell's 2016 sentencing hearing, the trial court commented on the seriousness and repetitive nature of Kimbrell's offenses; declaring, "Your criminal history is lousy." *Tr. Vol. 2* at 44, 45. It also said:

> "You were given every opportunity to work in the system, to work yourself out of it and you defied everyone. . . . .[A]s a delinquent you were adjudicated for burglary, for conspiracy to commit burglary, for theft, for conspiracy to commit theft, minor possession of alcohol, possession of marijuana, and dealing in marijuana. You were uncontrollable as a kid but yet you were given every opportunity through the system and what did you

do? Nine times you violated probation. Nine times. You just flaunted yourself to the authority of the court; you didn't care. Then the system had to deal with you; had to bring you back time, and time, and time, and time again and kept giving you every opportunity yet you failed in those tests. So, your criminal history and then as an adult you've got this offense, this underlying offense that we've been talking about. Your criminal history is lousy, and it is an aggravator. The fact that you committed this crime —these crimes while you were on pre— trial release.

*Id*. at 45. Kimbrell's advisory sentence is not inappropriate in light of his character.

[33] We affirm the trial court's imposition of the advisory twenty-year aggregate sentence and remand with instructions that the trial court recalculate Kimbrell's credit time for FB2 and FB-4.

[34] Affirmed and remanded with instructions.

Vaidik, C.J., and Altice, J., concur.